UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------x
DIANNE IERACITANO,                                  :      __ Civ. ____
                                                    :
                         Plaintiff,                 :      **COMPLAINT**
                                                    :
         -against-                                  :
                                                    :      PLAINTIFF DEMANDS
UBS FINANCIAL SERVICES INC.,                        :      TRIAL BY JURY
                                                    :
                         Defendant.                 :
------------------------------------------------------------------x

Plaintiff, Dianne Ieracitano ("Ieracitano"), by her attorneys, Liddle & Robinson, L.L.P., for her Complaint against Defendant, UBS Financial Services Inc. ("UBS"), alleges as follows:

## THE PARTIES

1. Ms. Ieracitano resides in Edgewater, New Jersey.

2. Upon information and belief, UBS, a Delaware corporation, with its principal place of business located in Weehawken, New Jersey, and "provides financial advisory services to high net worth individuals in the United States."[1]

## THE NATURE OF THE ACTION

3. This is a civil action for damages and remedies for discrimination in employment based on age in violation of the Age Discrimination in Employment Act (the "ADEA") and the New Jersey Law Against Discrimination (the "NJLAD"), and for retaliation for complaining of such discrimination in violation of the same.

---

[1] http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=294863

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

5. Ms. Ieracitano timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC").

6. On June 26, 2014, the EEOC issued a Final Determination, finding, among other things, that:

> Credible testimonial evidence confirms that Charging Party was subjected to a myriad of disparate treatment, disparate terms and conditions of employment, and overall hostile treatment from Respondent's manager. Charging Party confirms, and Respondent does not deny that she made internal complaints of age bias.
>
> Charging Party was consequently terminated on or about January 8, 2013. Respondent's defense that her termination was due to the elimination of her position does not withstand scrutiny.
>
> The evidence of record reveals that Charging Party was targeted for termination, in that no other similarly situated employee was separated during the relevant time period. An analysis of the evidence as a whole reveals that the reasons provided for selecting Charging Party for termination are not valid.
>
> Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent discriminated against Charging Party on the basis of age (54) and unlawful retaliation.

Exhibit A.

7. On August 7, 2014, the EEOC issued Ms. Ieracitano a Right to Sue because "it could not obtain a settlement with the Respondent that would provide relief to [her]." Ms. Ieracitano brings this action within ninety ("90") days of receiving the EEOC's Right to Sue. See Exhibit B.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in the District of New Jersey and a substantial part of the events giving rise to Ms. Ieracitano's claims occurred within this District.

## FACTS

9. Ms. Ieracitano is 56 years old. Her date of birth is October 6, 1958.

10. Ms. Ieracitano was employed by UBS (at 1000 Harbor Boulevard, Weehawken, New Jersey 07086) from November 17, 1986 until it terminated her employment on January 8, 2013.

11. Throughout her UBS employment, Ms. Ieracitano was qualified for her position and diligently performed her responsibilities.

12. From August 2008 to September 2010, Ms. Ieracitano reported directly to Sam Schweitzer, who thought very highly of Ms. Ieracitano's performance.

13. In 2009, Ms. Ieracitano received an "excellent" performance review for her work on the Consolidation Project for UBS's Operations Division.

14. Ms. Ieracitano's superior performance was repeatedly recognized by UBS personnel. By example, during the Consolidation Project, a UBS Managing Director, Jim Napolitano, wrote to Mr. Schweitzer praising Ms. Ieracitano's work. Another example of such praise was after Ms. Ieracitano's completion of the Physical Records Indexing System project, when a UBS Executive Director, Peter Amhrein, informed Mr. Schweitzer that the project was a success due to Ms. Ieracitano's efforts.

15. In September 2010, Rob Vascellaro took over as Ms. Ieracitano's new manager.

16. During Ms. Ieracitano's initial meeting with Mr. Vascellaro, he was hostile, condescending and demeaning toward her. In fact, he swung his car keys in her face and demanded that she retrieve his television from his car in the parking lot.

17. From September 2010 through December 2010, Mr. Vascellaro barely communicated with Ms. Ieracitano, which was highly unusual given the need to communicate with one another concerning ongoing work projects.

18. Ms. Ieracitano received an "excellent" rating on her 2010 performance review.

19. Mr. Schweitzer (and not Mr. Vascellaro), with whom Ms. Ieracitano worked closely in 2010, authored her 2010 performance review.

20. In early 2011, Mr. Vascellaro and UBS began promoting younger and more junior employees.

21. For example, on February 16, 2011, Maria Spatucci, approximately age 32, was promoted from a Non-Officer role to Associate Director.

22. Ms. Spatucci went from a position that was equal to Ms. Ieracitano's, to a position that was superior, despite her limited experience.

23. Upon information and belief, younger and less qualified individuals in Ms. Ieracitano's division were compensated at the same level or higher.

24. On February 16, 2011, Mr. Vascellaro set up a meeting with Ms. Ieracitano about her compensation.

25. During this meeting, Ms. Ieracitano complained of age discrimination. Specifically, Ms. Ieracitano complained that after all of her years of service to UBS, she felt demoralized by the unfairness that she was experiencing, and expressed that she was disturbed by the fact that her younger and less qualified colleagues were being promoted instead of her.

26. The next day, Ms. Ieracitano received a letter from Chuck Winters, Mr. Vascellaro's manager, notifying her of her appointment to "Authorized Officer."

27. Upon information and belief, UBS "promoted" Ms. Ieracitano to silence her complaints of discrimination, and because Mr. Vascellaro was concerned that Ms. Ieracitano would resign before completing an important project if UBS did not promote her.

28. Thereafter, Ms. Ieracitano complained to Mr. Vascellaro that her 1% salary increase was not on par with that of her younger and less-qualified colleagues who were promoted, such as Ms. Spatucci.

29. Ms. Ieracitano requested that Mr. Vascellaro allow her to telecommute. Mr. Vascellaro refused, without any explanation.

30. Mr. Vascellaro, however, routinely allowed younger and less experienced employees to telecommute.

   i. For example, the following younger and less experienced employees were permitted to telecommute:

      1. Russell Kempf, approximately age 40;
      2. Maria Spatucci, approximately age 32;
      3. Theresa Carley, approximately age 42;
      4. Gregory Boniello, approximately age 50;
      5. Jennifer Bailey, approximately in her early 30's;
      6. Tim Walker, approximately age 40;
      7. Annette Marsula, approximately age 40;
      8. Karly Hagopian, approximately age 28; and
      9. The younger business managers.

31. On August 24 2011, Mr. Vascellaro's administrative assistant, Donna Bontempo, yelled profanity at Ms. Ieracitano in the office. This incident led UBS's Human Resources Department ("HR") to issue Ms. Bontempo a verbal warning. However, standard practice would have been to issue her a written warning, a more serious warning level.

32. Immediately after Ms. Ieracitano reported Ms. Bontempo's conduct to Mr. Vascellaro, he set up a Business Managers Distribution List. The list included Ms. Spatucci (approximately age 32), Ms. Hagopian (approximately age 28), and Ms. Bontempo, and the business managers who were younger than Ms. Ieracitano. Ms. Ieracitano was excluded from this list.

33. In or around November 2011, Mr. Vascellaro placed Ms. Bontempo in charge of organizing Ms. Ieracitano's 25 year UBS anniversary luncheon.

34. Upon information and belief, Mr. Vascellaro purposely put Ms. Bontempo in charge of the anniversary luncheon, in an effort to retaliate against her for complaining of discrimination.

35. On November 10, 2011, Mr. Vascellaro began screaming at Ms. Ieracitano. Among other things, Mr. Vascellaro screamed that Ms. Ieracitano may only "speak when spoken to." Mr. Vascellaro's screaming persisted for approximately fifteen minutes.

36. Thereafter, George Walsh, a UBS Manager/Director, asked if she was okay, because he could hear Mr. Vascellaro's screaming at her throughout the office.

37. Mr. Walsh remarked that he was appalled at Mr. Vascellaro's abusive conduct towards her, and that it was clear to him that Mr. Vascellaro was treating her differently than other employees.

38. On November 16, 2011, at the monthly Business Managers meeting, Mr. Vascellaro, who led the meeting, deliberately ignored Ms. Ieracitano despite the fact that she would be managing the Renewal Project, which was then one of the division's most pressing initiatives.

39. Thereafter, on November 30, 2011, Ms. Ieracitano met with Andy Beck, Executive Director of HR, and complained of age discrimination and retaliation.

40. During this meeting, Mr. Beck asked Ms. Ieracitano why she did not attend Mr. Vascellaro's staff meetings.

41. Ms. Ieracitano responded by stating that she was not even aware that Mr. Vascellaro held staff meetings.

42. After complaining to HR, UBS personnel persisted in discriminating and retaliating against Ms. Ieracitano. For example, after complaining to HR, Ms. Hagopian purposely failed to provide Ms. Ieracitano with a copy of the strategy book given to every other member of Mr. Vascellaro's division.

43. Mr. Vascellaro failed complete Ms. Ieracitano's 2011 annual employee objectives.

44. Despite having successfully completed more projects that year than ever before in her 25 year career, in December 2011, Mr. Vascellaro – without basis – downgraded Ms. Ieracitano's performance review from "excellent" to "good." This was done in retaliation for Ms. Ieracitano complaining of discrimination.

45. This was the first time in Ms. Ieracitano's 25-year career that she had ever been ranked below "excellent" in her performance reviews.

46. On January 18, 2012, Ms. Ieracitano called the FAIR hotline, which was designed to help UBS employees resolve their disputes. Ms. Ieracitano complained to Lauren Healey, Director of Employee Relations, that she was being discriminated against on the basis of her age and was being retaliated against for complaining of discrimination.

47. Thereafter, at Ms. Healey's suggestion, Ms. Ieracitano attempted to schedule a reconciliation meeting with Mr. Vascellaro.

48. Mr. Vascellaro, however, delayed and postponed the reconciliation meeting on four separate occasions—including on one occasion due to a shoe-shining appointment.

49. A reconciliation meeting never took place.

50. During the first half of 2012, Ms. Ieracitano personally facilitated the Renewal Project, saving UBS millions of dollars.

51. Nevertheless, in July 2012, she was excluded from the celebration that Mr. Vascellaro organized for the completion of the Lincoln Harbor phase of the Renewal Project, which she spearheaded. All of the younger employees from her division were in attendance at the event, yet Ms. Ieracitano was intentionally excluded, and only learned of the celebration after it was over.

52. Mr. Vascellaro sent out a division-wide email thanking Ms. Hagopian for having ordered the bagels for the event, yet he declined to recognize Ms. Ieracitano for her efforts.

53. After Hurricane Sandy, on November 3, 2012 (a Saturday), Mr. Vascellaro called Ms. Ieracitano into work despite the office being closed due to safety concerns. Ms. Ieracitano complied.

54. In 2012, Mr. Vascellaro failed to give Ms. Ieracitano a year-end review, and ignored her requests to meet with him.

55. On January 8, 2013, Ms. Ieracitano met with Mr. Vascellaro and Mr. Beck, at which time UBS terminated her employment, claiming that UBS was eliminating her position, which was a pretext for discrimination.

56. UBS unlawfully discriminated and retaliated against Ms. Ieracitano by terminating her employment.

57. Ms. Ieracitano was the only person whose employment was terminated at this time.

58. UBS replaced Ms. Ieracitano with Ms. Hagopian, a less qualified and less experienced younger individual, who is more than approximately 25 years younger than Ms. Ieracitano.

## FIRST CLAIM
### (Age Discrimination Under The ADEA)

59. Ms. Ieracitano repeats and realleges the allegations contained above as if separately set forth herein.

60. At all relevant times, Ms. Ieracitano was an "employee" of UBS under the ADEA, 29 U.S.C. § 630(f).

61. UBS is an "employer" subject to the provisions of the ADEA, 29 U.S.C. § 630(b).

62. Ms. Ieracitano was member of a protected class throughout her entire employment at UBS because at all relevant times she was over forty years old.

63. Ms. Ieracitano was qualified for each of the positions she held at UBS.

64. By the conduct complained of above, Ms. Ieracitano has been deprived of equal employment opportunities and compensation, and her employment status as an employee has been adversely affected, because of her age.

65. By its conduct complained of above, UBS engaged in unlawful employment practices in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), by discriminating against Ms. Ieracitano because of her age.

66. As a result of the discrimination described above, Ms. Ieracitano has suffered a substantial loss of earnings and benefits and may continue to suffer such losses in the future. Accordingly, UBS is liable to Ms. Ieracitano for both back pay and front pay in amounts as yet undetermined, plus attorneys' fees, prejudgment interest and costs.

67. The unlawful practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b), entitling Ms. Ieracitano to an additional sum of liquidated damages.

## SECOND CLAIM
### (Age Discrimination Under The NJLAD)

68. Ms. Ieracitano repeats and realleges the allegations contained above as if separately set forth herein.

69. The NJLAD makes it illegal and unlawful to discharge or discriminate against an employee based on her age.

70. UBS's decisions to take adverse employment actions against Ms. Ieracitano, including terminating her employment, were based on her age.

71. The unlawful practices complained of above were intentional, entitling Ms. Ieracitano to punitive damages.

## THIRD CLAIM
### (Retaliation In Violation Of The ADEA)

72. Ms. Ieracitano repeats and realleges the allegations contained above as if separately set forth herein.

73. Ms. Ieracitano opposed UBS's unlawful, discriminatory employment practices and engaged in protected activity under the ADEA by complaining of age discrimination, as described herein.

74. UBS retaliated against Ms. Ieracitano for having engaged in the protected activity described herein.

75. UBS's actions constitute retaliation against Ms. Ieracitano in violation of the ADEA.

76. As a result of UBS's retaliation, Ms. Ieracitano has suffered substantial damages, including lost wages and benefits and emotional distress, in an amount to be determined at trial.

77. UBS's retaliation was engaged in with malice and/or reckless indifference to Ms. Ieracitano's federally protected rights.

## FOURTH CLAIM
### (Retaliation In Violation Of The NJLAD)

78. Ms. Ieracitano repeats and realleges the allegations contained above as if separately set forth here.

11

79. UBS retaliated against Ms. Ieracitano for having engaged in the protected activity described herein.

80. UBS's actions constitute retaliation and reprisals against Ms. Ieracitano in violation of the NJLAD.

81. UBS's retaliatory conduct was intentional, entitling Ms. Ieracitano to punitive damages.

WHEREFORE, while reserving the right to seek additional damages as available, Ms. Ieracitano demands judgment against UBS as follows:

a. An award of Ms. Ieracitano's actual damages in an amount to be determined at trial for loss of compensation and professional opportunities, including an award of back pay;

b. An award of reinstatement or front pay in lieu of reinstatement;

c. An award of damages to be determined at trial to compensate Ms. Ieracitano for her mental anguish, humiliation, embarrassment, and emotional injury;

d. An award of liquidated damages;

e. An award of punitive damages;

f. An award of reasonable attorneys' fees and the costs of this action;

g. An order directing UBS to cease and desist from its discriminatory and retaliatory practices and directing any other applicable injunctive relief; and

    h.      Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        November 6, 2014

                                          LIDDLE & ROBINSON, L.L.P.

                                          By: /s/ Michael E. Grenert
                                                Michael E. Grenert
                                          800 Third Avenue
                                          New York, New York 10022
                                          Phone: (212) 687-8500
                                          Fax: (212) 687-1505
                                          Email: mgrenert@liddlerobinson.com

                                          *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

It is hereby certified that as of the date hereof, the matter in controversy is not the subject of any other litigation, arbitration or administrative proceeding currently pending in any court or before any other body.

Dated: New York, New York
       November 6, 2014

LIDDLE & ROBINSON, L.L.P.

By: /s/ Michael E. Grenert
    Michael E. Grenert
800 Third Avenue
New York, New York 10022
Phone: (212) 687-8500
Fax: (212) 687-1505
Email: mgrenert@liddlerobinson.com

*Attorneys for Plaintiff*

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

1 Newark Center, 21st Floor
Newark, NJ 07102-5233
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-4684
TTY (973) 645-3004
FAX (973) 645-4524

## FINAL DETERMINATION

Dianne Ieracitano
305 Adams Ct.
Edgewater, NJ 07020

CHARGE NO: 520-2013-03291

UBS Financial Services Inc.
1000 Harbor Blvd.
Weehawken, NJ 07086

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Age Discrimination in Employment Act, as amended. Respondent is an employer within the meaning of the Act. All requirements for coverage have been met.

Charging Party alleges she began working for the Respondent on or about November 17, 1986. In or about September of 2010, she began reporting to a new Manager. This new Manager subjected her to disparate treatment compared to that of substantially younger employees. This disparate treatment included, but was not limited to, overall hostile behavior, disparate salary and promotional opportunities, the ability to telecommute, a lower performance evaluation rating, and exclusion from key distribution lists and meetings. Charging Party alleges she made complaints of same, yet little to nothing was done to resolve the issues. Charging Party asserts she was ultimately terminated from employment on or about January 8, 2013 in retaliation for her complaints of discrimination.

Respondent denies that Charging Party has been discriminated and/or retaliated against. Respondent contends that there were legitimate, non discriminatory reasons for each of its employment actions regarding Charging Party. Charging Party was separated from employment due to the elimination of her position, not for retaliatory or discriminatory animus.

Credible testimonial evidence confirms that Charging Party was subjected to a myriad of disparate treatment, disparate terms and conditions of employment, and overall hostile treatment from Respondent's Manager. Charging Party confirms, and Respondent does not deny, that she made internal complaints of age bias.

Charging Party was consequently terminated on or about January 8, 2013. Respondent's defense that her termination was due to the elimination of her position does not withstand scrutiny.

The evidence of record reveals that Charging Party was targeted for termination, in that no other similarly situated employee was separated during the relevant time period. An analysis of the evidence as a whole reveals that the reasons provided for selecting Charging Party for termination are not valid.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on the basis of age (54) and unlawful retaliation.

This determination is final. The statute requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the statute and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

John Waldinger
Area Director

JUN 2 6 2014
Date

# EXHIBIT B

EEOC Form 161-A (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

To: Dianne Leracitano
305 Adams Court
Edgewater, NJ 07020

From: Newark Area Office
1 Newark Center
21st Floor
Newark, NJ 07102

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2013-03291 | Dana M. Marucci, Acting Enforcement Supervisor | (973) 645-6021 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

John Waldinger,
Area Office Director

AUG 07 2014
*(Date Mailed)*

Enclosures(s)

cc: Christopher Galusha, Esq.
McElroy Deutsch Mulvaney Carpenter
1300 Mount Kemble Ave.
PO Box 2075
Morristown, NJ 07962

John R. Rothstein, Esq.
LIDDLE & ROBINSON, L.L.P.
800 Third Avenue
New York, NY 10022

Enclosure with EEOC
Form 161-A (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*